José R., MANUEL and CATALINA OLIVER ARESTI, ET ALS., Plaintiffs and Appellees, *v.* MANUEL V. DOMENECH, TREASURER. OF PUERTO RICO, ET ALS., Defendants and Appellants.

No. 8187.   Argued January 24, 1941.—Decided February 17, 1941.

*George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellants; *E. Pérez Casalduc,* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The heirs of Andrés Oliver Roses, who died on the 22nd ·of February, 1937, paid under protest to the Collector of Internal Revenue of Arecibo the sum of $24,802.06, as inheritance tax according to the assessment and computation made by the Treasurer of Puerto Rico. The same day that said payment was made, that is, on the 6th of March, 1939, the judicial administrator of the Oliver Estate wrote a letter to the Treasurer informing him of the payment made under protest, setting forth the reasons for his disagreement and notifying him that he appealed from the assessment and computation made by him to the Board of Review and Equalization.

In the petition for a writ of mandamus filed in the District Court of San Juan it is alleged in substance that the Treasurer refused to admit the appeal filed by the petitioners, alleging as his sole reason that the tax had been paid under protest; that the Treasurer as well as the other members of the Board of Review and Equalization, in spite of the fact that they knew of the filing of the appeal by the petitioners and despite the fact that they had been requested to do so, have refused to consider and review the assessment and computation made by the Treasurer. And alleging that they lacked another remedy at law, both speedy and adequate, petitioners requested the issuance of a writ of mandamus, ordering the Treasurer to admit the appeal, sending all the necessary documents to the defendant board, and ordering the latter to proceed to consider and decide said appeal.

After an alternative writ had been issued, the defendants appeared and filed an answer in which, after denying certain facts and accepting others, they alleged: That they accept having refused to admit petitioners' appeal, but deny that the only reason for said refusal was that the tax had been paid under protest; alleging on the contrary that their reasons were that no payment had been made under protest, taking into consideration the manner in which the same had been carried out, and that there was no statute which authorized the petitioners to appeal to the defendant Board.

On March 15, 1940, the lower court rendered judgment ordering the defendant treasurer to admit the appeal filed by the petitioners and to remit all documents of the case to the Board, so that it could hear and decide said appeal in accordance with the established practice.

The instant appeal filed by the defendants is based on the following assignments of error:

"1. Deciding that the plaintiffs filed an appeal to the Board of Review and Equalization.

"2. Deciding that the appeal to which said court refers complied with the requisites of law, and deciding furthermore that the Board of Review and Equalization could consider said appeal.

"3. Rendering judgment ordering the Treasurer to admit said appeal and the Board of Review and Equalization to consider said claims."

Let us see how the parties stated their respective theories:

The petitioners' theory is: That when they received the Treasurer's communication notifying them of the assessment of the properties and the amount of inheritance tax which the heirs had to pay, the latter were not satisfied and they agreed to make the payment under protest because they had need of obtaining the corresponding receipt to present it to the District Court of Arecibo; that the judicial administrator made the payment under protest on March 6, 1939, and on the same day notified the Treasurer by letter that he had made said payment under protest, also notifying him that he was appealing to the Board of Review and Equalization from the assessment and computation made by the latter; and lastly that the Treasurer had refused to admit the appeal and the Board had refused to consider and decide said appeal.

Defendants' theory is: That after the Treasurer has made an assessment and fixed the amount of the tax, the remedy of a taxpayer who is not satisfied with the Treasurer's ruling is to appeal to the Board of Review and Equalization, in order that the latter may review the Treasurer's acts, and if the taxpayer were not satisfied with the decision of the Board, in that case he can make the payment under protest and resort to the courts to recover the amount which has been improperly collected from him. But if—as was done in the instant case—the taxpayer makes the payment under protest before appealing to the Board, then the Board is not empowered to order the return of that which was paid under protest.

The only question to be decided in this appeal is whether or not the facts which we have set out above justify the issuance of a writ of mandamus.

The statutes in force in this island provide the procedure which must be followed by a taxpayer who is not satisfied with an inheritance tax levied upon him by the Treasurer of Puerto Rico, in order to have the acts of said officer reviewed by the courts.

Act No. 8 of April 19, 1927, p. 122, entitled "An Act providing for the payment of taxes under protest; establishing a procedure to authorize the collection and return thereof; etc." provides in its first Section that the taxpayer is compelled to pay when requested to do so by the collector; and if he wishes to make any claim when he makes the payment he must ask the collector to set out his protest on the back of his receipt, the taxpayer and the collector both having to sign the note. Section 3 grants to the taxpayer who has made a payment under protest a period of one year, counted from the date of the payment, to sue the Treasurer of Puerto Rico to recover the amount paid under protest.

Act No. 99 of August 29, 1925, p. 790, entitled "An Act to modify and extend the inheritance tax, etc.", as amended by Act No. 20 of April 27, 1933 (Laws of 1932–33, p. 232), provides:

"Section 7.—Within thirty days after the completion of said appraisal and assessment of taxes, any person or beneficiary affected thereby shall have the right to appeal therefrom to the Board of Review and Equalization."

Before being amended, Section 7, in its original form, granted to the taxpayer the right to appeal directly to the District Court after paying or guaranteeing all the costs and the total amount of the inheritance tax.

In order to be able to appeal from the assessment and computation made by the Treasurer, the taxpayer is not bound, under Section 7, *supra,* to guarantee the costs or to

make the payment under protest. All that he has to do is to appeal to the Board within 30 days counted from the date on which the assessment and computation were made. If the assessment and computation made by the Treasurer are affirmed or modified by the Board and the taxpayer is not satisfied, then he may make payment under protest in accordance with Section 1 of Act No. 8, of 1927, *supra*, and resort to the corresponding district court within the period of one year fixed by Section 3 of the said Act, to recover the amount.

In the case at bar the taxpayers made the payment under protest and after so doing notified the Treasurer that they were appealing to the Board. When they thus acted, they waived their right to appeal to said Board, since the latter has not the power or jurisdiction to order the return of taxes paid under protest. The district court is the one that has such a power when one resorts to it directly in accordance with Section 3 of Act No. 8 of April 19, 1927, or after the Board of Review and Equalization has rendered its decision in the appeal filed against the assessment and computation made by the Treasurer.

██ The lower court based its judgment on the fact that in accordance with Section 9 of Act 99 of August 29, 1925, Oliver's heirs were compelled to pay a tax "within the period of 180 days after the death of their predecessor in interest," assuming the risk in case they did not pay within that period, that the Treasurer should attach and sell for taxes properties of the deceased. The danger indicated by the court is more apparent than real. Before the Treasurer can proceed to attach properties of the deceased because inheritance tax has not been paid within the period set by Section 9, *supra*, it is necessary that said officer previously fulfil his duty of making an assessment of the properties and a computation of the tax which the heirs must pay, notifying the latter in due · course of the result of said assessment and computation.

In the case at bar the heirs were notified of the assessment and computation on the first of March, 1939. That assess-

ment and that computation could not be final until the period of 30 days which Section 7 grants to the heirs to appeal to the Board had elapsed. Once said appeal had been filed the Treasurer could not request the payment of the tax before the Board of Review and Equalization rendered its decision. After said decision had been rendered, the Treasurer could request the payment. And then the only remedy of the heirs would be to pay under protest and resort to the courts to recover the amount so paid. The payment made at the moment and in the manner in which it was made in the instant case is a premature and voluntary payment which prevents the heirs from appealing to the Board.

It is true that the defendant Treasurer has the ministerial duty of admitting the appeals filed by the taxpayers and that the Board is equally bound to consider and decide the questions raised by the appellants. However, in order that fulfillment of their duties may be ordered through a writ of mandamus, it is necessary that the parties have a clear and unassailable right to appeal to the Board, before paying the total amount of the tax. And we are of the opinion that in accordance with the facts and circumstances of the instant case, the petitioners herein did not have such a right. See: *Lutz* v. *Post,* 14 P.R.R. 830; *Díaz Navarro* v. *Kern,* 26 P.R.R. 32; and *Pacheco* v. *Cuevas Zequeira,* 27 P.R.R. 192.

For the reasons stated the appeal must be granted and the judgment appealed from reversed, costs to be paid by petitioners.